## NIX *v.* ELLIS, receiver.

1. Only mutual demands of the same nature can be set off against each other; but the debts need not grow out of the same transaction, nor be the result of mutual dealings, nor have arisen between the same parties. Hence, a transferred chose in action which can be sued on in the name of the assignee may be used as a set-off.

·2. When the parties are mutually indebted, there are mutual debts within the meaning of the Civil Code, § 3746.

3. One indebted to a bank may purchase a claim due by it, and use the same as a set-off, when subsequently sued on the debt due by himself.

·4. A receiver takes choses in action of a bank in the same plight in which they existed at the time of the filing of the equitable proceedings under which he was appointed, and subject to all set-offs which might have been pleaded thereto in a suit by the bank itself.

·5. The right of set-off in such cases exists only to the extent of the concurrence of the two claims. No lien can be obtained against the receiver for any excess due the defendant.

·6. By statute in many jurisdictions a debtor of an insolvent corporation can not purchase claims after the act of insolvency, so as to use the same as a set-off against his own liability, and thereby, in effect, secure a preference of the -claim so purchased.

7. In this State under the Civil Code, § 2719, the right to purchase claims and use the same by way of set-off continues up to the time of the filing of the petition for the appointment of a receiver.

·8. The defendant's right of set-off was vested at the time of his purchase of the claim, and was not destroyed by the subsequent filing of a creditor's equitable petition and the appointment of a receiver, though at the time the claim was acquired the purchaser may have had notice of the insolvency of the bank.

·9. Officers of a corporation, having peculiar opportunity to know of its condition, or those liable as stockholders to creditors, or occupying a trust relation of any sort, can not use their position to escape liability by the purchase of claims to be used as a set-off.

Argued June 8, — Decided August 11, 1903.

Complaint.   Before Judge Crisp.   City court of Americus. November 9, 1902.

*J. H. Lumpkin*, for plaintiff in error.
*W. A. Dodson* and *E. A. Hawkins*, contra.

LAMAR, J.   Nix was indebted to the Peoples Bank of Americus $208.   The bank was indebted to Hines as a depositor $355. On March 20, 1902, the bank made an assignment for the benefit of its creditors, and Ellis, assignee, entered and took possession.   On the next day Hines, for value received, duly transferred his account

against the bank to Nix. On the following day Sullivan and other creditors of the bank filed an equitable petition asking for a receiver and a decree declaring the assignment void. Under this bill Ellis was subsequently appointed receiver for the assets of the bank, and the deed of assignment was declared null and void. The receiver thereupon instituted a suit against Nix, who admitted the indebtedness, but claimed the right to set off the amount of the bank's indebtedness to Hines, which he had purchased. Nix was not an officer of the bank, and occupied no fiduciary or trust relationship to the creditors. *Wilkinson* v. *Bertock,* 111 *Ga.* 187. But on the ground that these claims were not mutual, or that the right of set-off, if it ever existed, was defeated by the fact that the purchase was made after the doors of the bank were closed, the judge directed a verdict for the receiver.

It is remarkable that there is hardly a case in our reports which in express terms recognizes the right of a defendant to purchase choses in action, and to use the same by way of set-off. Compare *Lee* v. *Lee,* 31 *Ga.* 26 (2); *Whitaker* v. *Pope,* 48 *Ga.* 13; *Morrow* v. *Merchants Bk.,* 35 *Ga.* 267. Although it avoided a useless circuity of actions, and was founded in natural equity, this reasonable right was not allowed until the statute of 2 Geo. II, c. 22, which is the basis of section 3746 of the Civil Code. *Meriwether* v. *Bird,* 9 *Ga.* 594, 597. By it any mutual demand between the parties existing at the commencement of the suit may be set off. Except in the case of dishonored notes (Civil Code, § 3750), the debts need not be connected, need not grow out of the same transaction, need not have arisen in mutual dealings, and the debt sought to be so used need not originally have been due to the defendant. It is true that the ancient opposition to assignments of choses in action caused the courts long to lean to a construction which restricted the right so to use assigned claims. But it was finally conceded, because, otherwise, an insolvent might recover his demand, while the solvent defendant with a valid claim could get nothing except a judgment in the separate and independent suit he was forced to institute against the other party. The transferee of an account or other chose in action having the right to sue in his own name (Civil Code, § 3077), the question as to how the claim arose is of little importance. If at the commencement of the suit each party has a cause of action of the same nature against the other in his

own name, and in the same capacity, one demand may be set off against the other. "For if the parties are mutually indebted, there are mutual debts." They do not ipso facto extinguish one another, as at the civil law; for the defendant must plead his set-off in bar; but where this is done, and the claim is established, the result, in some degree, relates to the condition existing at the time of filing the suit, and in effect determines that the two claims had cancelled each other by operation of law, and that when the suit was filed the real cause of action was for the difference after balance struck. *Meriwether* v. *Bird*, 9 *Ga.* 597; *State* v. *Brobston*, 94 *Ga.* 95; Wagoner *v.* Paterson Gas Co., 3 Zab. 283; Fennell *v.* Nesbit, 16 B. Mon. 351; Richardson *v.* Parker, 2 Swan, 529.

Assignees, trustees in bankruptcy, and receivers are not purchasers for value, and take the estate of the insolvent subject to all set-offs, liens, and incumbrances, and in the plight existing at the date to which his title is ultimately referred. *Powers* v. *Central Bank*, 18 *Ga.* 658; *Georgia Seed Co.* v. *Talmadge*, 96 *Ga.* 255. It may work an inequality in this case, but the assignment, having been declared to be void, is to be ignored except in so far as it affects the question of notice of insolvency. After it was set aside, if no receiver had been appointed it would not have deprived Nix of his right of set-off had he been sued by the bank. The written transfer of the account made him creditor, and the bank his debtor; he could at once have brought suit thereon in his own name (Civil Code, § 3077; *Mordecai* v. *Stewart*, 37 *Ga.* 379 (6); *Loudermilk* v. *Loudermilk*, 93 *Ga.* 443), with the privilege of securing liens by garnishment or attachment, or, unless prevented by some statute, he might have obtained from his debtor a preference by mortgage, collateral, or otherwise. He also had the fixed and vested right of set-off whereby in effect his debt to the bank was cancelled, paid off and discharged, and the bank's debt to him was satisfied to the extent of their concurrence. And relying on this right he may have failed to resort to others which would have equally availed him, and caused the same result to the other creditors. The bank really had no asset in its claim against Nix. It was as worthless as a note to which a valid plea of payment could have been interposed. If the bank had continued a going concern, it is evident that this debt from Nix was not a source from which it could pay creditors generally, nor was it available in any man-

ner, except as a credit on the account formerly due to Hines.    If
it was not an asset in the hands of the bank prior to filing the pe-
tition, it surely did not become such when a receiver was appointed.
And so, it has been held, "in cases of cross-indebtedness, the as-
sets of the bank consist only of the *balance* of the accounts.    That
is all the fund which the bank itself would have had to sat-
isfy its creditors, in case no receiver had been appointed.    And
there is no *equality* and no *equity* in putting a debtor of the bank
who has a just and legal set-off as against the corporation, in a
worse position, and creditors in a better position, by the failure of
the bank and the appointment of receivers."    Wagoner v. Pater-
son Gas Co., 3 Zab. 283.    In Fennell v. Nesbit, 16 B. Mon. 351,
it was ruled that the balance which remains after the set-off is de-
ducted is all that is actually due to the estate, and which can be
rightfully and justly applied in the course of administration.    See
also Richardson v. Parker, 2 Swan, 529.

But it is claimed that even if a defendant has a general right to
buy and set off when sued by a receiver, it ceases as soon as the
corporation becomes insolvent; that otherwise one with knowledge
of the insolvency can obtain a preference and an unjust advantage
over others equally entitled to share in the estate.    And these rea-
sons have appealed so strongly to many legislative bodies that some
have prohibited setting off claims assigned after the act of insol-
vency.    Scott v. Armstrong, 146 U. S. 499, 511; Davis v. Knipp,
99 Hun, 297; Venango Bank v. Taylor, 56 Pa. St. 14.    Others
deny this privilege to claims purchased within four months prior
to the filing of a petition in bankruptcy.    Bankruptcy act, 1898,
sec. 68 b.    If the title of the receiver had related to the fact of in-
solvency, or to the act of insolvency, or to the date of the assignment
or closing of the bank's doors, the result here would be different.
But whatever the test, there will always be hard cases and trans-
actions close to the dividing line, which might well have been put
within the rule.    But had they been so included it would only have
shifted the line of division, and hard cases close to the new would
in turn call for another enlargement.    The right of set-off is one
given by a definite law, and can only be destroyed by law.    There
must be some fixed rule, not one which varies and departs from the
straight course in order to take in exceptional cases.    In the ab-
sence of a statute the filing of the petition for the appointment of

a receiver closes the right to purchase claims and use them by way of set-off when sued by that officer. *Moise* v. *Chapman*, 24 *Ga.* 249; Colt v. Brown, 12 Gray, 233; Ogden v. Cowley, 2 Johns. 273. Compare Civil Code, § 2719. At that moment the rights of creditors attach; it ceases to be a going concern; the assets are impressed with a trust for the benefit of all alike. Prior thereto the privilege of buying claims to be used as a set-off continues, even though the assignee may know of the insolvency. The right exists up to the prohibited date. The principle is the same, whether death, the fact of insolvency, the act of insolvency, act of bankruptcy, or filing the bill be the determining period. Under the Civil Code, § 3751, claims purchased after the death of the intestate can not be set off in a suit by an administrator; but if A is indebted to B, and B is sick unto death, and insolvent, there is nothing in the sickness and insolvency to prevent A from purchasing a claim which C holds against B before the latter's death; and in a suit by the administrator of B a set-off of such debt would clearly be allowed. So, too, if A is indebted to a corporation, and the company is financially sick and approaching corporate death, he may use as a set-off claims purchased at any time up to the date when the rule or statute interferes and destroys the privilege. It will not do to extend the rule beyond the statute, though the reason thereof may apparently be equally applicable to cases outside of its terms; for what is sufficient to induce a legislature to make law will not authorize courts to change law.

Among the very first decisions on the subject is that of Dickson v. Evans, 6 Term Rep. 57, decided by Lord Kenyon in 1794, where he held that in a suit by the assignee the defendant could not set off notes issued by the bankrupt payable to bearer, bearing date before his bankruptcy, unless the defendant showed "that such notes came to his hands before the bankruptcy." "The assignee shall not recover against a debtor of the bankrupt what was due to the bankrupt on one side of the account, without also taking into consideration the other side of the account, and seeing on which side the balance lies. This is the justice of the case. And Grose, J., concurring, stated that "one object of the act was to prevent a debtor of the bankrupt going about the country for the purpose of purchasing the bankrupt's notes after the bankruptcy, and then pretending that he was a creditor at the time of the bank-

ruptcy." A fuller and more recent decision with a review of many of the authorities is that of Stone v. Dodge, 96 Mich. 514, where the court reached a similar conclusion, under the Michigan act declaring void transfers either after the commission of an act of insolvency or in *contemplation* thereof with a view to prevent the application of the assets in the manner prescribed. See McLaren v. Pennington, 1 Paige, 102; Penn. Bank v. Farmers Bank, 20 Atl. Rep. 150; Clark v. Brockway, 3 Keyes 13; Lanier v. Gayoso Bank, 9 Heiskell, 505. A case directly in point is Moseby v. Williamson, 5 Heisk. 278. There a certificate of deposit in a bank was assigned by J., the holder, to W., a debtor of the bank, after the suspension and closing of the doors, but before the filing of the bill for winding up its affairs as an insolvent corporation. It was held that the certificate was a valid claim of set-off in favor of W. against a debt due by him when sued by the receiver. In Hawkins v. Whitten, 10 Barn. & Cress. *217, under the English bankrupt act by which mutual debts and credits might be set off provided the party claiming the set-off had not notice of the act of bankruptcy, it was held, in an action by the trustee of certain bankers, that the defendant had the right " to set off notes of such bankers taken by him after he knew that they had stopped payment, but before he knew they had committed an act of bankruptcy." In the opinion Bailey, J., says: "Notice of an act of bankruptcy is alone the criterion or dividing point. . . It may be true, and is, that he took these notes for the very purpose of making them the subject of his set-off, and of getting, in substance, 20s. in the pound upon these notes; but as this is not prohibited, we can not say it is illegal." In Dickson v. Cass, 1 Barn. & Ad. *343, in an action by the assignee of certain bankers, it was held that a party had the right to set off the notes of such bankers taken by him after he knew that they had stopped payment, but before he knew that any of the partners constituting the banking-house had committed an act of bankruptcy. The right of set-off exists as to mutual debts at any time before the person became bankrupt. See Cook v. Cole, 55 Iowa, 70; Aldrich v. Campbell, 4 Gray, 284.

It will be found that the decisions holding that claims purchased after knowledge of insolvency can not be used by way of set-off are based on the language of a statute. The Louisiana cases are controlled by the principles of the civil law and the code of that State.

Smith *v.* Hill, 8 Gray, 572, is apparently in conflict with Aldrich *v.* Campbell, 4 Gray, 284, and Colt *v.* Brown, 12 Gray, 233, in so far as the general rule is concerned, though the facts there were very peculiar.   A bought B's stock of goods with the understanding that the purchase-money notes should be placed in the hands of a third person in trust for the payment of these creditors.   Afterwards A bought up claims against B and sought to use them as a set-off against these notes, which by his own act and the agreement of the parties had been impressed with a trust in favor of creditors. It is manifest that his claim of set-off should not have been allowed.   In Clark *v.* Brockway, 3 Keyes, 13, the debtor had made an assignment. The defendant gave his note to the assignee. The assignment was subsequently set aside and a receiver appointed, who sued Brockway on the notes formerly given to the assignee.   After the commencement of the proceedings to appoint a receiver Brockway became the owner of a note made to the assignor, and sought to use the same as a set-off in the suit brought by the receiver. The court held that this could not be done.   On the facts it is apparent that that case is not in conflict with the Tennessee and English cases above cited.

There is nothing in this record which shows that such will be the fact, but we can not shut our eyes to the fact that under the law inequalities may result, and one creditor may frequently obtain an advantage of others in the distribution of insolvent estates. Inequalities and hardships might likewise result if the law were different from that now of force.   With these consequences, however, we can not be concerned, and, as was said in the almost identically similar case of Hawkins *v.* Whitten, 10 Barn. & Cress. * 217, as the purchase and set-off are " not prohibited by law, we can not say it is illegal." *Judgment reversed.   By five Justices.*