ODOM *et al. v.* ATTAWAY.

No. 8472. DECEMBER 17, 1931.

*Oliver & Oliver* and *L. E. Heath,* for plaintiffs in error.

*T. M. Linder* and *S. P. New,* contra.

GILBERT, J. On December 8, 1927, M. L. Odom recovered, in an action for libel in Jeff Davis superior court, a judgment against Mrs. M. A. I. Attaway and her husband W. B. Attaway, the action having been based upon an effort of the Attaways to have Odom adjudicated a bankrupt. On March 6, 1929, in the same court Mrs. Attaway recovered against Odom a judgment in an action ex contractu. Odom is a resident of Pierce County. About December 9, 1929, the sheriff of Jeff Davis County levied the execution issued on the judgment of Odom against Mrs. Attaway upon described land as belonging to her. Both M. L. Odom and W. B. Attaway are insolvent. Odom's judgment was for $2112.35. Attaway's judgment was for approximately $2145.80. The case of Attaway against Odom was carried on writ of error, but without supersedeas, to the Court of Appeals, and was pending at the time of the filing of this suit in Pierce superior court, December 20, 1929. The judgment was affirmed in the Court of Appeals, January 29, 1930. *Odom* v. *Attaway,* 41 *Ga. App.* 51 (152 S. E. 148). After alleging what is set out above, the petition brought by Mrs. Attaway against Odom and the sheriff of Jeff Davis County prayed (1) that proceedings under the levy of the execution in favor of Odom be stayed by injunction; (2) that the judgments and executions be set off the one against the other; and (3) for general relief. Interventions were filed by Oliver & Oliver and L. E. Heath, attorneys, Oliver Investment Co., a corporation, Mrs. Wilmer S. Curling Meade, administratrix of the estate of H. B. Curling, deceased, and by M. E. Wood, the stenographer of the Brunswick Circuit. The interventions of the attorneys set up alleged prior liens upon the judgment of Odom against Mrs. Attaway, for legal services in the litigation which resulted in that judgment. The interventions of Oliver Investment Co. and Mrs. Meade set up assignments of the judgment, made prior to the date of the judgment of Mrs. Attaway against Odom, to secure certain debts. That of Wood set up a judgment for services in reporting the evidence in the case of Odom against Mrs. Attaway.

On the trial of the case the court directed a verdict for the

plaintiff; "that the smaller judgment and execution be set off against the larger one, not to affect the clerk, sheriff, and stenographer for their court costs; and for a permanent injunction for the plaintiff." Decree was rendered permanently enjoining the levy of the execution in favor of Odom upon payment by Mrs. Attaway of the costs of court which had accrued in Jeff Davis superior court, and providing that "upon failure to pay said sums [the court costs] the fi. fa. proceed for said sums only." Odom and the intervenors excepted to the direction of the verdict and to the decree. No motion for new trial was filed. Odom and the intervenors mentioned are designated in the writ of error as plaintiffs. Mrs. Attaway is named as defendant. The bill of exceptions contains a concluding statement in the following language: "Defendant and intervenors further contend that all the facts as shown above and as disclosed by the pleadings and evidence in the case were questions of fact to be determined by the jury, as to whether the plaintiff was guilty of such fraud as would deny her relief in a court of equity, and the same should have been submitted to the jury under appropriate instructions by the court for determination by the jury." Defendant moved to dismiss the writ of error, because (1) the sheriff of Jeff Davis County was not made a party; (2) the assignments of error on the direction of the verdict are insufficient to test the issues of fact, no motion for new trial having been made; (3) the assignments of error are insufficient to test the pleadings of plaintiff, in the absence of complaint as to a ruling on demurrer; (4) the assignments are vague and indefinite, and (5) they present an exhaustive brief of the law, which is not allowable.

At the time an amendment to the intervention in favor of Wood was offered, counsel for plaintiff stated: "I don't see any reason to object to the allowance of the amendment, just so it is allowed like it was before—allowed subject to demurrer or motion to strike. So far as we are concerned, . . we don't ask your honor to grant any injunction against the officers' court costs. I mean the sheriff and the clerk and the stenographer. They can't be paid any other way except by fees. Counsel can take care of themselves. Officers can't." It is contended, that, because the verdict and decree were invoked by counsel for petitioner, ·the statement of counsel as above quoted was an admission in judicio that petitioner

was not entitled to set off her judgment so as to defeat the costs and fees of officers of court; that this was a ratification of the judgment in favor of Odom, with the costs of the clerk and sheriff incorporated therein, and estopped the petitioner from setting off her judgment against that of Odom so as to affect the interests of the intervenors named; that her right, if any, to set off her judgment against that of Odom was entire, and not severable or divisible; that the decree does not follow the verdict, because the decree enjoins further proceedings on defendant's fi. fa., and at the same time provides that said fi. fa. shall, in the event of the failure to pay the costs, proceed for such sums only; that plaintiff is shown to be insolvent, and the decree does not do equity by requiring plaintiff to pay the difference between the judgments, but leaves it optional with her, and in that event provides that said fi. fa. shall proceed for said sums only, against an insolvent person; that the decree does not affirmatively require the payment of stenographer's fees, but only the payment of court costs, the stenographer's fees not being listed in the fi. fa., but in a separate judgment.

■ On the trial of the injunction suit, petitioner announced in open court that in undertaking to set off the execution of Attaway against the execution of Odom et al., and in seeking to enjoin the threatened levy under the latter execution, she did not seek "any injunction against the officers of court." It is insisted that this is an "admission in judicio, which was adverse to the interests of plaintiff, and in favor of the clerk, sheriff, and stenographer;" that the right of such set-off "is entire, and not severable;" and that by such announcement petitioner waived any right to set-off as against any of the judgment. The legal rights of the officers of court for their fees are not so connected with the other judgments as to make the rights of the plaintiff entire in the respect contended. Petitioner was legally authorized to waive any prayer for injunction as against the officers of court; she could elect to pay the amounts due them, and prosecute the injunction as against enforcement of other portions of the execution. Compare *Love* v. *National Ins. Co.,* 157 *Ga.* 259 (3, 4) (121 S. E. 648).

■ The second headnote does not require elaboration.

■ The sections of the Code which have reference to setting off one judgment against another and the assignment of judgments are as follows: § 4342: "Judgments in the same court may be set off

against each other on motion, the balance on the larger being collectible under execution. The rights of an assignee shall not be interfered with, if bona fide and for value." § 5670: "One judgment may be set off against another, on motion, whether in the hands of an original party or an assignee." § 5969: "Any plaintiff or transferee may bona fide, and for a valuable consideration, transfer any judgment or execution to a third person, and in all cases the transferee of any judgment or execution shall have the same rights, and be liable to the same equities, and subject to the same defenses as the original plaintiff in judgment was." It will be observed that there is a conflict, where assignees of judgments are concerned, in sections 4342 and 5670. When we turn to the text-writers on the subject, we find that the decisions in other jurisdictions have not been entirely in accord. This, of course, may be explained by the varying statutes under consideration. In 2 Freeman on Judgments (5th ed.), 2379, § 1142, we find the following statement: "The satisfaction of a judgment may be wholly or partly produced by compelling the judgment creditor to accept in payment a judgment against him in favor of the judgment debtor; or, in other words, by setting off one judgment against another. This is usually brought about by a motion in behalf of the party who desires to have his judgment credited upon or set off against a judgment against him. The court in a proper case will grant the motion. Its power to do this can not ordinarily be traced to any particular statute, and exists by virtue of its general equitable authority over its officers and suitors, though in some States the matter is regulated by statute, which, however, would not seem to materially change the previously existing doctrine, except perhaps to make set-off more a matter of right." The author cites in note 3, among other authorities, *Meriwether* v. *Bird*, 9 *Ga.* 594, and *Langston* v. *Roby*, 68 *Ga.* 406.

In 15 R. C. L. 820, § 287, we find the following: "The basis of the right to set off judgments is not different from the right to set off mutual claims of any kind. The manner in which the action of a court of law may be obtained in reference to a. right of set-off is by motion made to the court, notice of which should be duly given to the adverse party. The general rule appears to be that one judgment may be set off against another, although all the parties to the different records are not the same. Where a judgment is

obtained by a plaintiff against several defendants, one of them is entitled to have set-off against the plaintiff, especially if the latter is insolvent. On the other hand, it has been ruled that judgments between joint plaintiffs and joint defendants should be between the same group of parties, in order to be available as a set-off." Among the authorities cited is *Skrine* v. *Simmons, 36 Ga.* 402 (91 Am. D. 771), as follows: "The judgments being valid, why should not the larger be extinguished pro tanto by the smaller? Our court, in *Meriwether* v. *Bird, 9 Ga. R.* 597, quotes, with apparent approbation, the case of Commonwealth *vs.* Clarkson, 1 Rawle's Rep. 291, which decides that mutual demands extinguish each other by operation of law, without waiting for any act of the parties. In *Colquitt* v. *Bonner, 2 Kelly's Rep.* 155, this court holds that 'one judgment may be set off against another, although all the parties to the different records are not the same.' See also *Meriwether* v. *Bird,* supra. Code [1863] sections 2843, 3396, 3014, and 3015. No good reason has been suggested why the one judgment should not be set off against the other, and none such occurs to us." One judgment may, upon motion, be set off against another when such set-off is equitable. And in 15 R. C. L. 823, § 291, will be found the following: "In order that a judgment may be available as a set-off, it must be owned absolutely by the party seeking to use it for that purpose; but there is no objection to a party purchasing a judgment for the purpose of using it as a set-off, if this be done bona fide. Where a judgment is assigned, questions may arise between the assignor and the assignee in regard to their respective rights under an attempted use of the judgment as a set-off. Sometimes the right of set-off is considered as attaching to judgments as soon as they are entered in favor of each party. Hence a subsequent assignee of one of the judgments will take subject to the equity of the set-off." Practically all of the text-book writers state that a court of equity is invested with a discretion. See also Duncan *v.* Bloomstock, 13 Am. D. 728, 731, and annotations. Considering all of our code sections on the subject of setting off one judgment against another, we find that there can be no doubt as to the right of such set-off as between the original parties.

Coming now to the matter of assignees of such judgments, we find that in the Code, § 4342, it is expressly stated "the rights of an

assignee shall not be interfered with if bona fide and for value." In § 5670 we find that one judgment may be set off against another, on motion, whether in the hands of the original party or an assignee. It may be worthy of note that the provisions of § 4342 are expressly made applicable to "judgments in the same court," while the provisions of § 5670 contain no such restriction. The two judgments in this instance were rendered in the same court. By the terms of section 5670, it does not matter whether the judgments were rendered in the same court or in different courts. This latter section, therefore, follows the generally accepted theory that the power of the court to set off one judgment against another depends upon jurisdiction of the parties. Both sections 4342 and 5670 have appeared in all of the Codes beginning with 1863. The numbers of these sections in the various codes are

| Code | 1910 | 1895 | 1882 | 1873 | 1868 | 1863 |
|------|------|------|------|------|------|------|
| Sec. | 4342 | 3748 | 2902 | 2902 | 2851 | 2843 |
| Sec. | 5670 | 5086 | 3467 | 3467 | 3415 | 3396 |

Against each of the sections stated in the Code of 1882 appear references to Freeman on Judgments, § 277 et seq., § 467(a), and Duncan v. Bloomstock, supra, and against § 4342 in the same Code there appears the additional reference "Waterman on Set-Off, 372." It can not be definitely ascertained from the marginal notes the sources from which these two Code sections were derived. "It is a well-settled rule of construction that where there is a conflict between two parts of a single act, the latest in position will be declared to be the law, as from its position it is presumed to be the last expression of the legislative will. That such rule is well established can not be questioned. *Gilbert* v. *Railroad Company,* 104 *Ga.* 412 [30 S. E. 673. . . Other authorities are also cited.] The reason of this rule has been stated to be, that, 'in the reading of a bill, matter near the close may be presumed to receive the last consideration, and, if assented to, is a later conclusion.' Sutherland, Stat. Const. § 220." But Mr. Justice Cobb, for the court, continues: "If such is the reason, the rule should not be applied in all its strictness when the provisions of a code of laws are under consideration, as such a body of laws is rarely, if ever, read in the General Assembly. A rule founded upon the same principle is applicable when there are two conflicting sections in a code, and that is, that section prevails which is derived from a

source which can be considered as the last expression of the law-making power." *Lamar* v. *Allen,* 108 *Ga.* 158, at p. 164 (33 S. E. 958).

We have not been able to ascertain any legislative authority for sections 4342 and 5670, except the acts adopting the Codes as law. It remains to be considered, in case of a conflict between sections of the code in the circumstances just stated, whether one may be considered as preferred rather than the other; and if so, which. We have just seen that a rule of construction as between statutes "should not be applied in all its strictness" as between different sections of a code of laws. The inference is that the position of the two code sections may be considered, but their relative positions can not be held as conclusive of the legislative will. The later section, that is § 5670, does occupy a more favorable position, but, standing alone, that fact is not conclusive. The Codes of 1863, 1895, and 1910 were adopted as Codes of Georgia by the General Assembly, and all their provisions became endowed with the force and effect of statutes. Other Codes were "revisions" made by legislative direction. The Codes of 1863 and 1868 were ratified by the constitutions of 1865 and 1868. For a full history, see "History of the Various Codifications of the Laws of Georgia," first page of Code of 1910. Code (1910) § 5969 is derived from the act approved December 22, 1829 (Ga. Laws 1829, p. 69); Cobb's Dig. 499; Prince's Digest, 465. Here we have an expression of the legislative will. That section made express provision for a transfer or assignment of any judgment or execution to a third person. Under the terms of this section, a judgment may be transferred or assigned any number of times, provided there was good faith, and in all cases where done in good faith the transferee "shall have the same rights and be *liable to the same equities and subject to the same defenses as the original plaintiff in judgment was.*" This section again declares in express terms the same principles involved in section 5670.

In *Scott* v. *Harkins,* 32 *Ga.* 302, the opinion of the court concludes with this statement: "We need only say that the settled doctrine of this court is that the assignee of a judgment takes subject to all equities between the original parties." In the following cases the court dealt with the question of setting off one judgment against another. *Colquitt* v. *Bonner,* 2 *Ga.* 155; *Meriwether* v.

*Bird,* 9 *Ga.* 594; *Rawson* v. *McJunkins,* 27 *Ga.* 432; *Ligon* v. *Rogers,* 12 *Ga.* 281, 291; *Morris* v. *Bradford,* 19 *Ga.* 527; *Hammett* v. *Christie,* 21 *Ga.* 251, 253; *Langston* v. *Roby,* 68 *Ga.* 406; *Smith* v. *Evans,* 110 *Ga.* 536 (35 S. E. 633); *Register* v. *Southern States Phosphate &c. Co.,* 157 *Ga.* 561, at p. 567 (122 S. E. 323). In the case last cited Mr. Justice Hines, speaking for the court, said: "Judgments are not negotiable in the strict commercial sense, though assignable." This was said as a part of the argument which concluded with the statement: "Clearly an assignee of an execution takes it subject to any defense which the defendant might set up against the original plaintiff, whether such assignor took it with or without notice of the defense." In *Langston* v. *Roby,* the question arose as to the effect of these code sections where an attorney at law claimed a lien on one of the judgments. The court held that "the right of setting off one judgment against another is conferred by express statute, and may be exercised although the practical result may be an extinguishment of such judgment in whole or in part, and thereby the attorney may lose the power of enforcing it for his fee." The decision was based in part on the statute creating liens of attorneys for services rendered, now found in the Civil Code (1910) § 3364. The second paragraph of that section declares that "attorneys at law shall have the same right and power over said suits, judgments, and decrees, to enforce their liens, *as their clients had* or may have for the amount due thereon to them." In *Caudle* v. *Rice,* 78 *Ga.* 81 (3 S. E. 7), the court rendered a conflicting decision, stating that the *Langston* case differed in its facts. This court in *Smith* v. *Evans,* supra, dealing with the conflict of *Caudle* v. *Rice,* as compared with *Langston* v. *Roby,* stated: "It is impossible to reconcile these two decisions upon principle," and declared the latter case to be controlling. Plaintiff in error in the present case has formally requested in writing that this court review and overrule or modify the decisions in the cases of *Meriwether* v. *Bird, Langston* v. *Roby,* and *Smith* v. *Evans.* This request is denied.

■ The fourth headnote does not require elaboration.

It follows that the judgment of the trial court in decreeing a set-off was not erroneous.

*Judgment affirmed. All the Justices concur.*

**892**

Atkinson, J., concurs in the judgment of affirmance, but not in all that is said in the opinion.